<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMIR AYOUB,  :  <br>  :  <br>  Plaintiff,  :  <br>  :  <br>  v.  :  <br>  :  <br> JOSEPH L. BOCCHINI, JR., et al.,  :  <br>  :  <br>  Defendants.  :  | Civil No. 11-7100 (PGS)  <br><br> <u>OPINION</u> |

**APPEARANCES:**

    SAMIR AYOUB, #394437B
    South Woods State Prison
    215 Burlington Rd. South
    Bridgeton, NJ  08302

**SHERIDAN**, District Judge:

    Samir Ayoub, who is currently incarcerated at South Woods State Prison, seeks to file a Complaint <u>in forma pauperis</u> asserting violation of his constitutional rights under 42 U.S.C. § 1983.  This Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> and, as required by 28 U.S.C. § 1915(e)(2)(B), will dismiss the Complaint with prejudice for failure to state a claim upon which relief may be granted.

**I.  BACKGROUND**

    Plaintiff asserts violation of his constitutional rights under 42 U.S.C. § 1983 by Mercer County Prosecutor Joseph L. Bocchini, Jr., and Assistant Prosecutor Michelle S. Gasparian.  He asserts the following facts:

> (1) Joseph L. Bocchini did not supervise his Assistant and allowed manufactured, forged, and false evidence to be present in my jury trial just to convict me.
>
> (2) Assistant prosecutor manufactured, forged and false evidence that said I am the owner of family convenience store that store is owned by my co-defendant according to the records on file at Trenton City Hall. But the jury only heard what Gasparian said to them. She knows that document is false she did with full knowledge, purposely just to convict me, that was her lies, that only evidence was against me. This is a perjury, misconduct, misuse her power and a fabrication evidence.

(Dkt. 1 at 6.)

For relief, Plaintiff seeks "a lawyer to help [him] and to order [his] release from prison, with damage for pain and suffering. [He] want[s] the prosecutor to be disbarr[ed] for her lying, and not be allowed to do this anymore." (Dkt. 1 at 7.)

## II. STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks relief against a government employee or entity, and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B).

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[1] which was previously applied to determine if a federal complaint stated a claim.

---

[1] The Conley court held that a district court was permitted to dismiss a complaint for
(continued...)

See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  To survive dismissal under Iqbal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Iqbal, 556 U.S. at __, 129 S. Ct. at 1949 (citation omitted).  Officials may not be held liable under § 1983 for the unconstitutional misconduct of their subordinates.  Id. at 1948-49.  Rather, the facts set forth in the complaint must show that each government-official defendant, through the official's own individual actions, has violated the plaintiff's constitutional rights.  Id.  This Court must disregard labels, conclusions, legal arguments, and naked assertions.  Id. at 1949.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief", and will be dismissed.  Id. (citations and internal quotation marks omitted).  The Third Circuit instructs that, to determine the sufficiency of a complaint under the pleading regime established by Iqbal,

> a court must take three steps:  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947.  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950.  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

---

[1](...continued)
failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

Santiago v. Warminster Township, 629 F. 3d 121, 130 (3d Cir. 2010); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) ("a complaint must do *more than allege the plaintiff's entitlement to relief.* A complaint has to "show" such an entitlement with its facts") (emphasis supplied). The Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983. See Iqbal, 129 S Ct. at 1947-48. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

Plaintiff seeks damages against Assistant Prosecutor Gasparian for providing false evidence to the jury in his criminal proceeding. In Imbler v. Pachtman, 424 U.S. 409 (1976), the Supreme Court held that a prosecutor is absolutely immune from damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and . . . presenting the State's case," id. at 430-31, including use of misleading or false testimony and suppression of evidence favorable to the defense by a police fingerprint expert and investigating officer. Since Imbler, the Supreme Court has held that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application[,but] absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application." Van de Kamp v. Goldstein, 555 U.S. 335, 343 (2009) (citations omitted). Moreover, Plaintiff has shown no legal basis for granting injunctive relief. See Younger v. Harris, 401 U.S. 37 (1971); Preiser v. Rodriguez, 411 U.S. 475 (1973).

Finally, Plaintiff also seeks damages from Prosecutor Bocchini for failing to adequately supervise Gasparian. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* [and] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. In Iqbal, the Supreme Court rejected the proposition that a supervisory defendant can be liable for "knowledge and acquiescence in their subordinates' [misconduct.]" Id.

5

> [Plaintiff's] conception of 'supervisory liability" is inconsistent with his accurate stipulation that [persons] may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a <u>Bivens</u> action - where masters do not answer for the torts of their servants - the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

<u>Iqbal</u>, 129 S. Ct. at 1949.

As Plaintiff fails to assert facts showing that Bocchini violated Plaintiff's federal rights, the Complaint fails to state a claim against this defendant under the <u>Iqbal</u> pleading standard. Moreover, in <u>Van de Kamp</u>, the Supreme Court held that a supervisory prosecutor is absolutely immune for failing to adequately train and supervise district attorneys on the duty not to withhold impeachment evidence and failing to create any system for accessing information pertaining to the benefits provided to jailhouse informants. The Supreme Court explained:

> [Petitioner's] claims focus upon a certain kind of administrative obligation - a kind that itself is directly connected with the conduct of a trial. Here, unlike with other claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an essential element of the plaintiff's claim. The administrative obligations at issue here are thus unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like. Moreover, the types of activities on which Goldstein's claims focus necessarily require legal knowledge and the exercise of related discretion, <u>e.g.</u>, in determining what information should be included in the training or the supervision or the information-system management. And in that sense also Goldstein's claims are unlike claims of, say, unlawful discrimination in hiring employees. Given these features of the case before us, we believe absolute immunity must follow.
>
> We reach this conclusion by initially considering a hypothetical case that involves supervisory or other office prosecutors but does not involve administration. Suppose that Goldstein had brought such a case, seeking damages not only from the trial prosecutor but

> also from a supervisory prosecutor or from the trial prosecutor's colleagues - all on the ground that they should have found and turned over the impeachment material about Fink.  <u>Imbler</u> makes clear that all these prosecutors would enjoy absolute immunity from such a suit.  The prosecutors' behavior, taken individually or separately, would involve preparation . . . for . . . trial, and would be intimately associated with the judicial phase of the criminal process because it concerned the evidence presented at trial.  And all of the considerations that this Court found to militate in favor of absolute immunity in <u>Imbler</u> would militate in favor of immunity in such a case.
>
> The only difference we can find between <u>Imbler</u> and our hypothetical case lies in the fact that, in our hypothetical case, a prosecutorial supervisor or colleague might himself be liable for damages *instead* of the trial prosecutor.  But we cannot find that difference (in the pattern of liability among prosecutors within a single office) to be critical.  Decisions about indictment or trial prosecution will often involve more than one prosecutor . . . .  We do not see how such differences . . . could alleviate <u>Imbler</u>'s basic fear, namely, that the threat of damages liability would affect the way in which prosecutors carried out their basic court-related tasks.

<u>Van de Kamp</u>, 555 U.S. at 344-45.

Because the named defendants are immune from suit for damages and Plaintiff's allegations fail to state a claim, this Court will dismiss the Complaint with prejudice against both defendants, as amendment would be futile.

### IV.  CONCLUSION

For the reasons set forth above, the Court will dismiss the Complaint.

       *s/Peter G. Sheridan*
       **PETER G. SHERIDAN, U.S.D.J.**

December 14, 2011